UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| MARGARET R. KAISER, | ) No. CV 04-01150-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| v. | ) AND ORDER |
| | ) (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed.

Following the Decision of an Administrative Law Judge ("ALJ") on

1  May 29, 2002, which found Plaintiff not to be under a disability (AR
2  40-48), the Appeals Council remanded the matter for a new hearing,
3  finding that the 2002 Decision failed to adequately evaluate treating
4  source opinion. (AR 75-76.)  Consequently, hearings were held on May
5  7, 2003 (AR 425-430), and October 8, 2003 (AR 431-490).  At the second
6  hearing, Plaintiff appeared and testified, represented by counsel, and
7  testimony was also taken from her husband, a medical expert ("ME"),
8  and a vocational expert ("VE").  Again the same ALJ found Plaintiff to
9  be not under a disability in a written Decision dated December 19,
10 2003. (AR 17-26.)  The Appeals Council denied subsequent review, and
11 Plaintiff proceeded with this action.
12      In her Motion, after providing a helpful summary of the medical
13 evidence, Plaintiff asserts that the ALJ erroneously rejected the
14 opinions of her consulting rheumatologists, Drs. Ryba and Panahi.
15 Plaintiff documents that both physicians had diagnosed her with
16 fibromyalgia.  Indeed, the ALJ found that fibromyalgia is one of
17 Plaintiff's severe impairments. (AR 19.)
18      Extensive testimony regarding fibromyalgia was elicited from the
19 ME at the hearing, and bears more than passing discussion in this
20 Opinion.  At the outset of his testimony, the ME confirmed the
21 diagnosis of fibromyalgia, among other severe impairments. (AR 452.)
22 He also noted degenerative disc disease, nonradicular low back pain,
23 track and tear bursitis of the left hip, bilateral TMJ dysfunction,
24 and tendinitis of the rotator cuff on the right, and noted that
25 "there's no Social Security listing for this particular group of
26 symptoms, which together collectively produce a diagnosis called
27 fibromyalgia." (AR 453.)  With regard to whether Plaintiff could
28 sustain basic work-related activity on a full-time basis, the

following testimony, elicited by the ALJ, is especially relevant:

> "Q   Well, based on your review of the medical record, including the [Plaintiff's] complaints to her physician and the treatment of record, do you believe it's more likely than not by a preponderance of evidence that the [Plaintiff] could sustain basic work related activity eight hours a day, five days a week, usual breaks, no more than one or two days off per work month?
>
> A   Well, not unless there was a remarkable change in her -- activities of daily living. In other words, patients with fibromyalgia do better with activity than with inactivity. They need to be encouraged to move about and maintain a level of fitness and when they become -- it's self-perpetuating in that they become less and less active. They sleep more and more. They get less benefit from sleeping. They wake up tired and they stay tired. And so under the current status, I would assume she probably could not, but it's possible to really be aggressive in activities that would promote better nutrition, better circulation, better muscle tone.
>
> Q   Are you saying that is a treatable condition?
>
> A   It's treatable, but not curable. I --"

(AR 453-454.)

The ME then testified that Plaintiff would not be currently

3

capable of work:

> "Q   And on the basis of this particular record, do you believe that as a result of her medical conditions, the [Plaintiff] is able or unable to sustain basic work related activity eight hours a day, five days a week, with no more than one or two days of absence?
>
> A   At the -- at a current level, I do not think she could do that.
>
> Q   And as of what day or what time?
>
> A   Well, as of the current status."

(AR 454-455.)

This testimony resulted in additional persistent questioning by the ALJ, to which the ME indicated that Plaintiff has never been noncompliant with medications or treatment modalities, and further, that there is no indication of a deliberate or willful exaggeration of symptoms. (AR 459.) The ME noted that Plaintiff had not been prescribed a "real program" of physical therapy "to improve functional performance." (AR 465.) With regard to the manner of diagnosing fibromyalgia, the following testimony is also relevant:

> "Q   Any tests or examinations that you feel haven't been done that would be helpful to me in establishing whether or not the [Plaintiff] meets or equals any of the Social Security listings?
>
> A   No, and fibromyalgia basically has normal exams. The lab work is normal. The -- their muscle testing is normal. The joint testing is normal.

4

1  The muscle strength is normal. We have only
2  subjective symptoms and the only objective
3  evidence that seems to be agreed upon by their
4  rheumatologist is these 18 tender points. The
5  rest of it is all subjective, disturbance in
6  sleep, fatigue, jaw pain, knee pain, upper back
7  pain are all subjective reporting. But they do
8  not -- they're not supported by objective
9  evidence.
10 Q  But you wouldn't expect them to be?
11 A  No, that's the characteristic of fibromyalgia.
12    That's why it's not a disease entity as such.
13    It's a collection of symptoms."
14 (AR 471-472.)

16 Additional questioning of the ME again confirmed that in the case
17 of fibromyalgia, the treating physician is in a better position to
18 determine the patient's functional abilities, and again, the ME opined
19 that Plaintiff cannot work on a full-time basis, in the following
20 testimony:
21    "Q  Okay. And it's your testimony that in your
22        opinion, you don't think the [Plaintiff] could
23        work on a regular full-time eight hour job?
24     A  Not at the present -- not unless she went through
25        a physical rehabilitation program where they --
26        probably in a facility where they would have
27        multiple inputs from -- you know, not just a
28        doctor alone but a whole team, the team approach,

5

1         to get her activated into a life situation where
2         she can do more activities that [sic] she's been
3         doing."
4 (AR 475.)

6    Despite this unequivocal and consistent testimony which would
7 support a finding of disability, the ALJ, in her Decision, insisted
8 that she accorded greatest weight to the opinion of the ME. (AR 22.)
9 In effect, however, the ALJ was relying on written Medical Expert
10 Interrogatories which the ME completed prior to the hearing (see AR at
11 333-336), and not on the ME's later testimony, which effectively
12 repudiated those interrogatory answers. Indeed, the ALJ made no
13 mention whatsoever in her Decision of this very important testimony.
14    The Court also finds to be irreconcilable the ALJ's acceptance of
15 the consistent diagnosis of fibromyalgia by both Plaintiff's treating
16 physicians and the ME, with the rejection of the functional
17 assessments of these treating physicians on the stated basis that they
18 are not supported by objective findings, but instead rely excessively
19 on Plaintiff's self-reporting. (See AR at 21-22.) The reports of
20 these physicians are accompanied by positive clinical findings which,
21 according to the ME's testimony, constitute sufficient objective
22 evidence for a diagnosis of fibromyalgia. (See AR at 307-318, 325-332:
23 Dr. Panahi's medical records.) Similarly, a consulting examination by
24 Dr. Ryba contains clinical results supportive of the diagnosis. (See
25 AR at 257-265.)
26    Finally, the Decision contains an implicit rejection of
27 Plaintiff's credibility regarding her pain symptoms, which is not
28 supported by proper legal standards. (See Bunnell v. Sullivan, 947

1  F.2d 341, 345-46 (9th Cir. 1991).)  The Court finds the stated reasons
2  to be substantially insufficient and/or incorrect. (<u>See</u> AR at 20.)
3  The first reason, a purported lack of objective manifestations of
4  chronic pain, is not supported by the record.  There is no indication
5  of noncompliance with any recommended treatment or medication.  The
6  ME's testimony substantiates the complaints of chronic pain.  Second,
7  reference to Plaintiff's discontinuation of aquatic therapy is, in the
8  context of the Decision, inappropriate.  The ALJ seems largely focused
9  on the fact that Plaintiff and her husband sold their house, and with
10 some of the profits, built a swimming pool to be used for aquatic
11 therapy.  The ALJ ignored very explicit testimony by Plaintiff and her
12 husband that their medical insurance contained substantial limitations
13 on payments for physical therapy sessions which could effectively cost
14 Plaintiff and her husband two to three hundred dollars per session,
15 more than they could afford. (<u>See</u> AR at 476-478.)  The statement in
16 the Decision that, "Additionally, it is the impression of the
17 undersigned that the [Plaintiff] has little incentive to work with her
18 spouse's income and ability to purchase a new home and a new car, and
19 to install a swimming pool" reflects a bias which is factually
20 unfounded, and which leaves the Court with little confidence that on
21 remand, the errors in the Decision will be rectified by this ALJ.
22 Consequently, on remand, the Appeals Council will assign this matter
23 to a new ALJ.
24 //
25 //
26 //
27 //
28 //

Based on the foregoing, this matter will be remanded for a new hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: September 2, 2005

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE